UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            **Plaintiff,**<br><br>          **v.**<br><br>CRAIG H. CARTON,<br>JOSEPH G. MELI,<br>ADVANCE ENTERTAINMENT, LLC,<br>ADVANCEM LTD.,<br>MISOLUKI, INC.,<br>MISOLUKI, LLC,<br>TICKET JONES, LLC, and<br>TIER ONE TICKETS, LLC,<br><br>                    **Defendants.** | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission" or "SEC"), alleges as follows:

## SUMMARY

1.      This case involves a fraudulent offering of securities by Craig Carton ("Carton"), a New York-based sports radio personality, Joseph Meli ("Meli"), a New York-based businessman, and their six entities. The entity defendants are Advance Entertainment, LLC, controlled by Meli; and five Carton-controlled entities: AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and Tier One Tickets, LLC (the "Carton Entities").

2.      Beginning in or around the middle of 2016, at about the time he accrued millions of dollars' worth of gambling-related debts to casinos and other third parties, Carton solicited investments in ticket reselling enterprises purportedly engaged in purchasing and reselling large

blocks of concert tickets for substantial profits.  Carton falsely claimed to investors that he—sometimes on his own and sometimes through Meli—had access to millions of dollars' worth of concert tickets at face value.

3.      Carton provided fabricated and forged documents to an investor purporting to reflect agreements for the purchase of large blocks of tickets by entities controlled by Meli or Carton.  In certain cases, Meli provided these fake agreements to Carton, for the express purpose of having Carton pass them along to an investor.

4.      Carton provided to one investor fictitious agreements for entities controlled by Meli or Carton to purchase at face value, directly from a concert promoter or venue, millions of dollars' worth of tickets to upcoming concerts by the artists Katy Perry, Justin Bieber, Roger Waters, Metallica, and Barbra Streisand.  In reality, no such agreements with the concert promoter or venue existed, and the signatures for the concert promoter or venue were forged. Carton provided to another investor documents referencing a purported agreement by an entity controlled by Meli to purchase millions of dollars' worth of Adele concert tickets at face value, directly from Adele's management company.  Again, there was no such agreement with Adele's management company.

5.      Carton and Meli used new investor funds to repay earlier investors and other preexisting debts, including Carton's debt to casinos, rather than to purchase tickets for resale as promised.  Carton and Meli together misappropriated at least $3.6 million from two investors. Carton additionally misappropriated another $2 million from one of the same two investors.  In one instance, Carton misappropriated investor funds by making misrepresentations to both the investor and a third-party concert venue, so as to trick the concert venue into forwarding the investor's funds to an entity controlled by Carton.

6.      As a result of the conduct alleged herein, each of the Defendants violated, and unless permanently enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

7.      The Commission seeks against each of the Defendants a permanent injunction, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9.      Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions and courses of business alleged in this Complaint, including communications with investors and prospective investors, occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails.  In addition, Carton and Meli reside in the district.

## DEFENDANTS

10.      Craig H. Carton, age 48, lives in New York, New York.  He is a founder, owner,

3

and/or officer of each of defendants AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket

Jones, LLC, and Tier One Tickets, LLC.  Carton also co-hosts a sports radio program based in

New York, New York.  Carton had a financial relationship with Meli dating back to at least

January 2015, which included Carton and various entities affiliated with Carton receiving, over

approximately two years, a net total of approximately $5.4 million from Advance Entertainment,

LLC and another Meli-controlled entity.

11.     Joseph G. Meli, age 43, lives in New York, New York.  He is the founder and sole

owner of defendant Advance Entertainment, LLC.

12.     Advance Entertainment, LLC ("Advance Entertainment" or "AE") is a Delaware

limited liability company controlled by Meli and organized in 2011 with a principal place of

business in New York, New York at Meli's residence.  Meli was an authorized signer for at least

one bank account in the name of Advance Entertainment that received investor funds directly

from a hedge fund (the "Hedge Fund") and indirectly from an individual investor (the

"Individual Investor") (via Misoluki, Inc.), and that was used to make payments as part of the

fraudulent scheme charged in this Complaint.

13.     AdvanceM Ltd. ("AdvanceM") is a New York corporation controlled by Carton

and another individual who was an associate of Carton and Meli's ("Associate 1").  AdvanceM

was organized in 2016 with a principal place of business in New York, New York at an address

used by Carton for multiple business ventures.  Associate 1 was an authorized signer for at least

one bank account in the name of AdvanceM that received investor funds indirectly from the

Hedge Fund (via Advance Entertainment), and that was used to make payments as part of the

fraudulent scheme charged in this Complaint.  Bank records identify Carton and Associate 1 as

50/50 owners of AdvanceM.

14.     Misoluki, Inc. ("Misoluki, Inc.") is a New York corporation controlled by Carton and organized in 2016 with a principal place of business in New York, New York at an address used by Carton for multiple business ventures.  Carton was an authorized signer for at least one bank account in the name of Misoluki, Inc. that received investor funds directly from the Individual Investor, and that was used to make payments as part of the fraudulent scheme charged in this Complaint.  Bank records identify Carton as Misoluki, Inc.'s President and Secretary.  Misoluki, Inc. is the parent company of Ticket Jones, LLC.

15.     Misoluki, LLC ("Misoluki, LLC") is a Pennsylvania limited liability company controlled by Carton and organized in 2010 with a principal place of business in New York, New York.  Misoluki, LLC's address was identified in certain bank records as Carton's residence in New York, New York, and was identified in an agreement signed by the Individual Investor as a different address in New York, New York used by Carton for multiple business ventures.  The Individual Investor signed an agreement with Misoluki, LLC, pursuant to which the Individual Investor paid Misoluki, Inc.

16.     Ticket Jones, LLC ("Ticket Jones" or "TJ") is a New York limited liability company controlled by Carton and organized in 2016 with a principal place of business in Freeport, New York at the address of Carton's accountant.  Pursuant to an agreement with Ticket Jones, the Hedge Fund invested both with Carton and Meli together, and also separately with Carton.  Ticket Jones is a subsidiary of Misoluki, Inc.

17.     Tier One Tickets, LLC ("Tier One Tickets") is a New York limited liability company controlled by Carton and Associate 1 and organized in 2016 with a principal place of business in New York, New York.  Associate 1 was an authorized signer for at least one bank account in the name of Tier One Tickets that received investor funds indirectly from the Hedge

Fund, and that was used to make payments as part of the fraudulent scheme charged in this Complaint. Carton represented to the Hedge Fund that he owned 99% of Tier One Tickets, while Associate 1, whom Carton held out to be his CFO, owned 1%. Carton wrote emails to third parties on behalf of Tier One Tickets and provided his personal email address as the entity's contact.

## FACTS

### Carton Accrued Millions of Dollars' Worth of Gambling-Related Debt
### Just Prior to Misappropriating Investor Funds

18.     By the late summer of 2016, Carton had accrued substantial debt to various casinos and other third parties.

19.     On or about August 31, 2016, Carton emailed Meli and Associate 1 that he had "approx. $2.5 in outstanding debt that comes due over the next 30 days or so starting September 9," which referred to a debt of approximately $2.5 million, and that this "significant debt that is coming due" was created when a particular casino had recently frozen his account.

20.     On or about September 7, 2016, Carton emailed Meli and Associate 1, stating that he had debts totaling "around $3M in the whole"; that he had "risked and lost $700 of investor money," which referred to a $700,000 loss; that he owed "$825 ASAP" to a particular individual, which referred to an $825,000 debt; and that he owed "a total of $500 on the 12th" to two particular casinos, which referred to a $500,000 debt. As described below, approximately one week after sending this email, Carton used a majority of the funds invested by the Individual Investor ($730,000 out of $1,000,000) to repay the same individual and two casinos identified in this email.

**Carton and Meli Made Material Misrepresentations to the Individual Investor in Order to
Raise and Misappropriate $1 Million**

21.     On or about September 6, 2016, the Individual Investor, through his affiliated

entity, wired $1 million to Misoluki, Inc.  Carton and the Individual Investor had agreed this was

an investment in a pooled interest in large blocks of tickets to various upcoming concerts of the

singer Adele.  In actuality, Carton and Meli together misappropriated the Individual Investor's

funds so that the majority (at least $730,000) was used within one week to repay Carton's

preexisting, gambling-related debts.

22.     The Individual Investor first met Carton in or around the summer of 2016.  Carton

presented an Adele ticket investment opportunity to the Individual Investor.  Carton told the

Individual Investor he had access to large blocks of Adele tickets through a partner, Joseph Meli.

Carton represented that the Individual Investor could expect to receive a "1.3x" to "1.5x" return

on his investment within a few months.  The Individual Investor primarily communicated with

Carton but also communicated directly with Meli at least once, in or around November 2016.  In

that conversation, Meli made misrepresentations to the Individual Investor, described below.

23.     By August 2016, Carton was pressuring the Individual Investor to invest.  On or

about August 20, 2016, Carton emailed the Individual Investor: "Every week that passes will

essentially put us two weeks back in regards to available inventory."  On or about August 26,

2016, Carton emailed the Individual Investor: "I do have to ask for a signed agreement today.  If

you want to wait till Monday to wire funds that's fine but again everyday we don't have funds is

another day we lose access to tickets."

24.     In or around August or September 2016, Carton provided to the Individual

Investor, and the Individual Investor signed, an agreement (the "Individual Investor Agreement")

with Misoluki, LLC.  The Individual Investor Agreement stated the following (among other

things): Misoluki, LLC has agreed to purchase from Advance Entertainment up to $4.5 million worth of Adele tickets.  The ticket resale process is to be controlled by Misoluki, LLC.  Proceeds from the resale of tickets will be distributed by November 15, 2016.  All proceeds will be used first to repay the Individual Investor's principal plus a 10% annualized return.  Any remaining proceeds will be split 50/50 between Misoluki, LLC and the Individual Investor, pro rata with any other investors.  Further, Misoluki, LLC promises to use the Individual Investor's $1 million "exclusively for the purchase of the Tickets," and if Misoluki, LLC "does not purchase the Tickets within 20 days of receiving the Funds from Investor (or uses only a portion of the Funds for such purchase), the unused Funds shall be returned promptly to Investor via wire transfer." The Individual Investor Agreement expressly contemplated the pooling of the Individual Investor's funds with other investors' funds.

25.     The Individual Investor Agreement falsely stated that Advance Entertainment "owns and/or controls" tickets to Adele's 2016 North American concert tour pursuant to an agreement between Advance Entertainment and Adele's management company.  In or around August or September 2016, Carton also provided to the Individual Investor a copy of a document purporting to be an agreement between Misoluki, Inc. and Advance Entertainment, signed by Meli on behalf of Advance Entertainment.  This document included a similar false representation, stating that Advance Entertainment "owns and/or controls" $15 million worth of Adele tickets at face value.  In reality, Advance Entertainment/Meli had no such agreement with Adele's management company for the purchase and sale of millions of dollars' worth of Adele tickets.

26.     On or about September 6, 2016, the Individual Investor (through his affiliated entity) wired $1 million to a Misoluki, Inc. bank account controlled by Carton.  The Individual

Investor understood this money was for his investment in Adele tickets pursuant to the Individual Investor Agreement with Misoluki, LLC.  However, Carton and Meli together misappropriated the Individual Investor's $1 million, using the bulk of it to repay Carton's preexisting, gambling-related debts, and using none of it to make payments to Adele's management company:

a.  On or about September 8, 2016, Misoluki, Inc. wired $990,000 to an Advance Entertainment bank account controlled by Meli.

b.  On or about September 12, 2016, this Advance Entertainment bank account wired $900,000 to a joint personal bank account in the names of Carton and Associate 1. No payments to Adele's management company were made from the $90,000 of the Individual Investor's $1 million that remained in Advance Entertainment's bank account.

c.  On or about September 12, 2016, this joint Carton/Associate 1 bank account wired a total of $480,000 to two casinos.  In his September 7, 2016, email (described above), Carton had stated he owed "a total of $500 on the 12th" to the first casino and an affiliate of the second casino.

d.  Also on or about September 12, 2016, the joint Carton/Associate 1 bank account wired $100,000 to another Carton personal bank account.  No payments to Adele's management company were made from this $100,000 wired to Carton's personal bank account.

e.  On or about September 13, 2016, the joint Carton/Associate 1 bank account wired $250,000 to the same individual to whom Carton stated he owed "$825 ASAP" in his September 7, 2016, email (described above).

f.  Also on or about September 13, 2016, the joint Carton/Associate 1 bank account
    wired $30,000 to an entity believed to provide landscaping and swimming pool-
    related services.

g.  On or about September 14 and 15, 2016, the Misoluki, Inc. bank account
    transferred another $9,000 to the joint Carton/Associate 1 bank account.  No
    payments to Adele's management company were made from the $1,000 of the
    Individual Investor's $1 million that remained in Misoluki, Inc.'s bank account.

27.   In or around November 2016, the Individual Investor spoke with Meli and
inquired as to the status of his Adele ticket investment.  In that conversation, Meli falsely
represented that he had a deal to resell his multi-million dollar Adele ticket inventory to
JPMorgan Chase Bank.  As Meli knew, this statement was false and misleading.  Meli had no
such agreement with JPMorgan Chase Bank and furthermore, had no multi-million dollar Adele
ticket inventory to sell.

28.   In or around December 2016 and January 2017, more than a month later than
promised, the Individual Investor was paid a total of $1.33 million in four wires from Carton's
personal bank account.  These payments were not funded by the proceeds from any resale of
Adele tickets.  Rather, the payments to the Individual Investor were funded by a combination of
money from Carton's subsequent investor (the Hedge Fund); a short-term, high-interest personal
loan to Carton, which Carton repaid approximately 10 days later, also using the Hedge Fund's
money; and money that Carton received from various casinos in or around December 2016 and
January 2017.

29.   One of Carton's goals, beginning soon after the Individual Investor made his
Adele ticket investment, was to convince the Individual Investor to reinvest in another ticket-

10

related deal.  On or about September 28, 2016, approximately three weeks after the Individual

Investor invested $1 million, Carton emailed Meli and Associate 1: "If we return [the Individual

Investor's] investment plus 30%.  So a total of $1.3.  He will fund either Metallica or DTI

today."  (Metallica and DTI both refer to other purported ticket-related investment

opportunities.)  On or about October 24, 2016, Carton texted Meli: "I talked to [the Individual

Investor].  As soon as we return $1.3 to him he will come in for $2m on Metallica."

     30.    Using funds from a subsequent investor and other sources to pay the Individual

Investor purported "returns" on his Adele ticket investment had the impact Carton was aiming

for.  In or around March through April 2017, the Individual Investor reinvested $900,000 with

Carton for another ticket-related investment.

### Carton and Meli Provided Fabricated Documents to the Hedge Fund in Order to Raise and Misappropriate $2.6 Million

     31.    Once the Individual Investor made his Adele ticket investment, Carton focused on

an institutional investor with the potential to invest on a larger scale.  In or around September

2016, Carton began soliciting the Hedge Fund for an investment opportunity involving the resale

of large blocks of concert tickets.  After working out the specifics of the deal (addressed below),

on or about December 8, 19, and 22, 2016, the Hedge Fund wired three payments totaling $2.6

million of the Hedge Fund's pooled investor funds to Advance Entertainment.  The Hedge Fund

understood it was investing in pooled interests in blocks of tickets to the 2017-18 concert tours of

Katy Perry, Justin Bieber, Roger Waters, and Metallica.  As detailed below, Carton and Meli

together misappropriated the full $2.6 million to pay $600,000 to Carton (the majority of which

Carton promptly forwarded to various casinos); to repay $500,000 for a short-term, high-interest

personal loan that Carton had borrowed for the purpose of repaying a portion of the Individual

Investor's purported returns on the Adele ticket investment; and to repay a total of approximately

$1.5 million to two entities that had previously invested in purported opportunities involving Meli and Advance Entertainment (the "Earlier Meli Investors"). The purported opportunities in which the Earlier Meli Investors invested did not involve Carton or the Carton Entities.

32.     In or around September 2016, Carton had begun soliciting a partner at the Hedge Fund, whom Carton had met through a charity organization, about a ticket resale investment opportunity. On or about September 28, 2016, Carton emailed the Hedge Fund partner a presentation document detailing, among other things, Advance Entertainment's purportedly substantial experience and successful track record in ticket investments and resales. Meli had emailed earlier versions of this document to Carton in or around June 2016.

33.     The presentation document that Carton emailed to the Hedge Fund partner represented, among other things:

     a.  "AE is a leading investor in premium ticket opportunities within live music and theater";

     b.  "From 2012 through 2016, AE has invested $55 million across 17 deals";

     c.  "Per deal average MOIC [multiple on invested capital] of 2.2x and IRR [internal rate of return] of 187%"; and

     d.  "AE has an active pipeline of $200+ million of similar ticket opportunities across live music, theater, and sports."

34.     Carton represented to the Hedge Fund employees who vetted the investment opportunity that he (Carton) also had prior experience in reselling event tickets, including to sporting events. The Hedge Fund, in contrast, had no prior experience in ticket investments or resales.

35.     The Hedge Fund employees who vetted the investment opportunity primarily communicated with Carton, but they also met with Meli and Carton together at least once before investing, in or around November 2016, as part of their due diligence.  At this meeting, Meli falsely represented to the Hedge Fund employees that he had deals that gave him direct access to purchase large blocks of tickets to Broadway shows and concerts.

36.     On or about December 8, 2016, the Hedge Fund and Carton signed a $10 million agreement that was titled a revolving loan agreement (the "Hedge Fund Agreement") between the Hedge Fund and Ticket Jones.  Ticket Jones was a new entity organized by Carton on or about December 1, 2016, for the purpose of raising funds from the Hedge Fund.  Ticket Jones had no pre-existing assets, equity, or operations.  The Hedge Fund's investment with Carton/Ticket Jones was approved by the Hedge Fund's investment committee.

37.     The Hedge Fund Agreement expressly provided that Ticket Jones would use the proceeds from ticket resales first to repay the Hedge Fund's principal and a 10% preferred return, followed by another 50% of Ticket Jones' share of any additional net proceeds.  The Hedge Fund Agreement also included the following terms (among other things): The agreement defines the terms "Investment" and "Permitted Investment."  The Hedge Fund's money is to be used for "direct or indirect acquisition of, or investment in, Event Tickets."  The Hedge Fund Agreement has a maturity date of four years.  It is the responsibility of Carton/Ticket Jones (not the Hedge Fund) to identify ticket investment opportunities.  The ticket resale process is to be controlled not by the Hedge Fund, but by Carton/Ticket Jones or other parties purportedly engaged in ticket reselling (such as Advance Entertainment).

38.     The Hedge Fund Agreement made clear that the Hedge Fund's money may be pooled with other investors' funds.  Further, the Hedge Fund and Carton/Ticket Jones agreed that

the Hedge Fund's $2.6 million paid to Advance Entertainment was for pooled interests in a portion of Advance Entertainment's purported $40 million combined total inventory of Katy Perry, Justin Bieber, Roger Waters, and Metallica tickets (as discussed below, Carton and Meli falsely claimed that Advance Entertainment had agreements to purchase $10 million worth of tickets per artist). As the Hedge Fund understood, other investors were putting up the rest of the $40 million.

39.     In texts and emails, Carton reinforced the notion that the Hedge Fund was making an investment for a share of the expected profits from ticket resales. For example, on or about October 12, 2016, Carton texted Meli with the good news that he had secured a commitment from an "investor," referring to the Hedge Fund. On or about December 18, 2016, a Hedge Fund employee emailed Carton that he was eager to "see this investment play out; ie ticket sales" and further stated that "[i]f they do well, we'll be able to reinvest quickly, which will really help the returns." On or about December 22, 2016, Carton and the Hedge Fund employees exchanged emails in which Carton referred to the "investment opportunities" he had brought to the Hedge Fund, and a Hedge Fund employee responded: "I'm very excited about this investment. . . . [H]ere's to a fun and profitable 2017!"

40.     The Hedge Fund Agreement attached, among other exhibits, five documents captioned "Letter Agreement." The "letter agreements" were each dated December 1, 2016, and were substantially similar in their form and terms. Each "letter agreement" purported to reflect an agreement between Advance Entertainment and one of the world's largest concert promoters (the "Concert Promoter"). Each "letter agreement" purported to commit those parties to purchase and sell $10 million worth of tickets at face value to each of the following 2017-18 concert tours: Justin Bieber, The Chainsmokers, Ariana Grande, Katy Perry, and Roger Waters.

(The Hedge Fund and Carton/Ticket Jones ultimately agreed that the Hedge Fund's $2.6 million investment with Advance Entertainment was for three of these five concert tours—Justin Bieber, Katy Perry, and Roger Waters—plus a 2017-18 Metallica concert tour.)  Each "letter agreement" was signed by Meli on behalf of Advance Entertainment and appeared to be signed by an executive for the Concert Promoter.  However, these "letter agreements" were fabricated and the purported signature of the Concert Promoter's executive was forged on each document.  In reality, Advance Entertainment/Meli had no agreements to purchase $10 million worth of tickets to the upcoming concert tours of Justin Bieber, The Chainsmokers, Ariana Grande, Katy Perry, or Roger Waters.

41.     Carton specifically asked Meli to create the purported "letter agreements," for the express purpose of providing them to the Hedge Fund.  Although these fake agreements purported to be between Advance Entertainment (a Meli-controlled entity) and the Concert Promoter (a third party), Carton dictated the terms he wanted reflected in them.  Specifically, on or about December 3, 2016, Carton texted Meli: "Update.  I'm closing on Monday with [the Hedge Fund] at 11:00.  JM: I need all those letter agreements executed and done with Ticket Jones.  Can TJ be mentioned in each of those individual concert agreements."  One minute later, Carton texted Meli: "These guys are buttoned up and have pledged us $10m.  Let's close this [expletive] now."  On or about December 5, 2016, Carton texted Meli: "Please have letters between Advance and [the Concert Promoter] say $10m and if they can be signed would be perfect."  On or about December 7, 2016, Carton emailed the Hedge Fund the purported "letter agreements"—each signed (with a forged signature on behalf of the Concert Promoter) and for the purchase and sale of $10 million worth of tickets, as Carton had specified.

15

42.     On or about December 16, 2016, Carton emailed the Hedge Fund a similar, signed "letter agreement," purportedly between Advance Entertainment and the Concert Promoter, for the purchase and sale of $10 million worth of tickets at face value to Metallica's 2017-18 concert tour.  As with the previous "letters agreements," this one was also forged and fabricated.  In reality, Advance Entertainment/Meli had no agreement to purchase $10 million worth of tickets to these upcoming Metallica concerts.  Furthermore, the Concert Promoter was not the promoter for Metallica's 2017-18 concert tour.  This tour belonged to a competitor of the Concert Promoter, and the Concert Promoter did not have the ability to sell these Metallica tickets.

43.     Carton and Meli did not intend to use the Hedge Fund's money in connection with acquiring blocks of concert tickets for resale, as Carton represented to the Hedge Fund.  Instead, Carton and Meli planned to use the Hedge Fund's money to repay preexisting debts they both owed—Meli to the Earlier Meli Investors, and Carton to the Individual Investor, his personal lender, and various casinos.

44.     On or about December 6, 2016, Meli texted Carton and Associate 1:

> We use [the Hedge Fund's] money to repay debts. Where do we get the money to buy tickets and furthermore what deal do we offer the money provider for the tickets? We cannot pay [the Hedge Fund] with other people's money right away because it does not work. We need [the Hedge Fund] to buy deals with long lead times and earn money in the interim and use the earned money to replace the [Hedge Fund] funds in ticket deals on [*sic*] the future. That is the math we have to figure out and work it into a schedule to get down to zero.

Less than five minutes later, Carton replied to Meli's text: "Agreed."

45.     On or about December 8, 2016, the Hedge Fund wired $700,000 to an Advance Entertainment bank account controlled by Meli.  Carton and the Hedge Fund had agreed this money was to be used as a 10% down payment on a $7 million pooled interest in tickets to Katy Perry, Justin Bieber, Ariana Grande, and Roger Waters' upcoming concert tours.  (The parties

16

later agreed to reallocate the funds originally designated for Ariana Grande to Metallica tickets.)
In actuality, Carton and Meli together misappropriated the Hedge Fund's $700,000:

    a.   On or about December 9, 2016, the Advance Entertainment bank account wired
the full $700,000 to an AdvanceM bank account (with Associate 1 as an
authorized signer).

    b.   On or about December 12, 2016, this AdvanceM bank account wired $200,000 to
Carton's personal bank account.  The same day, Carton wired the full $200,000 to
a casino.

    c.   Also on or about December 12, 2016, the AdvanceM bank account wired the
remaining $500,000 to Carton's short-term, high-interest personal lender.  On or
about December 2, 2016, Carton had borrowed $500,000 from this personal
lender and had used these borrowed funds in part to repay the Individual Investor
for his Adele investment.

46.    On or about December 19, 2016, the Hedge Fund wired another $1 million to the
same Meli-controlled Advance Entertainment bank account.  Carton and the Hedge Fund had
agreed this money was to be used for an investment in tickets to Metallica's 2017-18 concert
tour.  The money was misappropriated again: On or about December 21, 2016, the Advance
Entertainment bank account wired $990,000 to the Earlier Meli Investors. The remaining
$10,000 was not used to purchase Metallica concert tickets.

47.    On or about December 22, 2016, the Hedge Fund wired another $900,000 to the
same Meli-controlled Advance Entertainment bank account for an investment in additional
tickets to Metallica's concert tour.  Once again, the money was misappropriated: On or about
December 23, 2016, the Advance Entertainment bank account wired $500,000 to one of the

Earlier Meli Investors and another $400,000 to Carton's personal bank account.  The same day,

Carton wired a majority of the $400,000 from his personal bank account to various casinos.

### Carton Provided Fabricated Documents and Made Material Misstatements in Order to Raise and Misappropriate Another $2 Million from the Hedge Fund

48.     Also in or around December 2016, Carton convinced the Hedge Fund to invest in

a separate deal for the purchase and resale of $2 million worth of tickets to two specific,

upcoming performances by Barbra Streisand and Metallica.  On or about December 19, 2016, the

Hedge Fund wired $2 million of its pooled investor funds to a third-party company that operated

major sports and entertainment venues (the "Venue Company").  Carton and the Hedge Fund had

agreed this money would be used to purchase $1 million of tickets to each of the two agreed-

upon concerts.  The Hedge Fund invested this money under the existing Hedge Fund Agreement

with Ticket Jones (described above).  Carton/Ticket Jones agreed to resell the Barbra Streisand

and Metallica tickets and promised to repay first the Hedge Fund's principal plus a 10%

preferred return, followed by 50% of any additional net proceeds.  Meli and Advance

Entertainment do not appear to have been involved in this aspect of the scheme.

49.     To induce the Hedge Fund to make this additional investment, Carton deceived

the Hedge Fund into believing that, as of December 16, 2016, Ticket Jones had an agreement

with the Venue Company for the purchase and sale of $2 million worth of tickets to the two

agreed-upon Barbra Streisand and Metallica concerts.  In reality, Ticket Jones/Carton had no

such agreement with the Venue Company.  As detailed below, Carton achieved this deceit by

providing multiple fabricated documents to the Hedge Fund—including a fake email purportedly

from the Venue Company's Chief of Staff to Carton, and a fake agreement bearing the forged

signature of the Venue Company's CEO.  Carton used his prior dealings and existing

relationships with the Venue Company's executives to lend an added air of plausibility to his

ruse.  Carton's deceit did not stop with providing fake documents to the Hedge Fund.  As described below, when the Hedge Fund made its $2 million investment, Carton misappropriated the money by lying to both the Hedge Fund and the Venue Company.  As a result of Carton's trickery, two days after the Hedge Fund's $2 million investment, the Venue Company forwarded the full $2 million to Tier One Tickets, another entity controlled by Carton.  From there, the money was divvied up between Carton, Associate 1, and a third party.

50.     On or about December 16, 2016, Carton forwarded to the Hedge Fund an email that Carton had fabricated.  The fake, forwarded email appeared to be from the Venue Company's Chief of Staff to Carton, and appeared to attach an unsigned agreement between Ticket Jones and the Venue Company.  The fabricated cover email purportedly from the Chief of Staff to Carton stated: "If everything is in place please execute and we will do the same."  The attachment was an unsigned document entitled "Event Ticket Agreement," which purported to reflect an agreement between Ticket Jones and the Venue Company for the purchase and sale of $3 million worth of Barbra Streisand and Metallica tickets at face value (Carton changed the dollar amount to $2 million in the final version of the fake agreement).  The Venue Company's Chief of Staff did not draft or send this email or the attached "Event Ticket Agreement."  Carton fabricated these documents in order to misrepresent to the Hedge Fund that Ticket Jones was close to finalizing an agreement with the Venue Company for the purchase and sale of Barbra Streisand and Metallica tickets.

51.     On or about December 18, 2016, a Hedge Fund employee emailed Carton, stating that the Hedge Fund needed Ticket Jones' finalized agreement with the Venue Company.  Later that day, Carton emailed the Hedge Fund a document signed by Carton on behalf of Ticket Jones, and bearing the purported signature—which Carton had forged—of the Venue Company's

CEO.  The forged document was entitled "Ticket Jones Event Ticket Agreement," and appeared to be a finalized version of the unsigned "Event Ticket Agreement" that Carton had forwarded to the Hedge Fund on or about December 16, 2016.  The finalized "Ticket Jones Event Ticket Agreement" purported to reflect an agreement between Ticket Jones and the Venue Company for the purchase and sale of $2 million worth of Barbra Streisand and Metallica tickets at face value, to two specific concerts at a particular venue operated by the Venue Company.  In reality, Ticket Jones/Carton had no such agreement with the Venue Company.

52.    Carton fabricated this purported "Ticket Jones Event Ticket Agreement" and forged the signature of the CEO of the Venue Company.  The CEO had never seen and did not sign (or authorize anyone else to sign) the "Ticket Jones Event Ticket Agreement."

53.    The final step in Carton's fraud was aimed at getting the Hedge Fund's $2 million into his own pocket.  Carton first requested that the Hedge Fund send this money to one of two Carton Entities: Ticket Jones or Tier One Tickets.  On or about December 16, 2016, Carton emailed two Hedge Fund employees, stating that they could "wire to Ticket Jones and then to Tier One or direct to Tier One."  On or about December 17, 2016, Carton made a similar request, emailing the Hedge Fund: "Wire Situation: For the [Venue Company] deal we can do a wire to Ticket Jones and then TJ makes a wire and sends it to [the Venue Company]."  However, believing it was better practice to send the money directly to the third party from whom the tickets were to be acquired, a Hedge Fund employee emailed Carton on or about December 18, 2016, stating that the Hedge Fund would wire its $2 million directly to the Venue Company.  So, Carton devised a ploy to divert the Hedge Fund's money from the Venue Company to himself.

54.    The fabricated "Ticket Jones Event Ticket Agreement" that Carton provided to the Hedge Fund on or about December 18, 2016, included wire information for the Venue

Company's bank account.  Minutes after emailing the Hedge Fund the final, fake agreement, Carton emailed the Hedge Fund: "[N]ow you have the official wire info for [the Venue Company]."

55.     In a series of emails on the morning of December 19, 2016, a Hedge Fund employee repeatedly asked Carton to arrange for the Hedge Fund to call the Venue Company directly to confirm the wire information that appeared in the purported "Ticket Jones Event Ticket Agreement."  To prevent any such direct contact, Carton falsely represented, in three separate emails on the morning of December 19, 2016, that this was not possible because "[t]he [Venue Company's] execs are in Orlando"; "they are in meetings most of the day apparently"; and "[t]hey are in meetings till 4:30 and then flying home."  Carton knew these statements were false.  The Hedge Fund ultimately relented; later that day, the Hedge Fund wired $2 million to the Venue Company, relying on Carton's confirmation of the wire information.

56.     On the morning of December 19, 2016—while Carton repeatedly lied to the Hedge Fund that the Venue Company's executives were unavailable to take a call that day— Carton called the Venue Company's Chief of Staff and told him to expect a $2 million wire. Carton falsely claimed the wire had been sent "in error" and that Carton's investor meant to send the money to another bank account.  Carton stated that the money should be "refunded" to a bank account in the name of Tier One Tickets.  In emails to the Venue Company on or about December 19 and 20, 2016, Carton confirmed that the wire should be sent to Tier One Tickets and provided the wire information for the Tier One Tickets bank account.  Carton's ploy worked: On or about December 21, 2016, the Venue Company, relying on Carton's confirmation, wired the Hedge Fund's full $2 million to Tier One Tickets, accompanied by the following memo by the Venue Company: "Return of Wire Sent in Error."

57.     The $2 million sent from the Hedge Fund to the Venue Company, and then diverted to Tier One Tickets, was not used to purchase tickets to the two agreed-upon Barbra Streisand and Metallica concerts.  In actuality, Carton misappropriated the Hedge Fund's $2 million: $950,000 was wired to his personal account, and Carton used these funds to repay the Individual Investor and various casinos; and more than $1 million was wired to a combination of Associate 1, an entity controlled by Associate 1, and a third party.  None of the Hedge Fund's $2 million was used to purchase tickets to the two concerts in question.

58.     In or around January 2017, weeks after Carton had falsely represented to the Hedge Fund that the Venue Company had agreed to sell $2 million worth of Barbra Streisand and Metallica tickets to Ticket Jones, Carton was still angling to strike a deal with the Venue Company to purchase these same tickets.  On or about January 3, 2017, Carton emailed the Venue Company's Chief of Staff: "I'm ready to fund as much as you will allow. . . . Metallica as much as possible . . . . Streisand both dates as many as possible."  On or about January 8, 2017, Carton emailed the CEO and Chief of Staff of the Venue Company that he wanted to "hopefully execute a meaningful Agreement with you" and "[i]f possible would like to work towards Agreement this week."

59.     Carton later used his personal credit card to purchase a fraction of the $2 million worth of tickets to the two concerts the Hedge Fund had agreed to invest in.  In or around February 2017, Carton purchased from the Venue Company approximately $16,000 worth of Metallica tickets and approximately $345,000 worth of Barbra Streisand tickets.  Carton charged these amounts to his personal credit card.  Carton did not subsequently purchase any more tickets to these two concerts before they took place.  In or around February 2017, Carton additionally purchased $500,000 worth of tickets to a different Barbra Streisand concert—on a different date

22

and at a different venue—from the one the Hedge Fund had agreed to invest in before wiring its
$2 million investment to the Venue Company in December 2016.  Carton was ultimately unable
to resell a significant portion of the Barbra Streisand tickets he purchased.

60.     To maintain his ruse, Carton subsequently lied to the Hedge Fund about its cash
balance at the Venue Company.  The Hedge Fund mistakenly believed—based on Carton's
misrepresentations and omissions—that its money remained in the Venue Company's possession
and would be used to pay for additional Barbra Streisand and Metallica concert tickets as the two
concert dates approached.  On or about March 3, 2017, a Hedge Fund employee emailed Carton
with a request: "[C]an we get confirmation what our February month end cash balance is at [the
Venue Company]."  Later that day, the Hedge Fund employee reiterated in another email to
Carton that "the most pressing item is the cash balance at [the Venue Company] – do we have
that?"  Carton responded approximately half an hour later by email that the Hedge Fund had
"$831,615 on deposit at [the Venue Company]."  Carton knew this statement was false.  In
December 2016, Carton had orchestrated the diversion of the Hedge Fund's $2 million from the
Venue Company to Tier One Tickets.  At all times since then, the Hedge Fund had $0 on deposit
at the Venue Company.

61.     The Hedge Fund has not been repaid any portion of the $2.6 million of its investor
funds paid to Advance Entertainment or the $2 million of its investor funds indirectly paid to
Tier One Tickets (via the Venue Company) in December 2016.

## FIRST CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### (Violations of Section 17(a)(1), (2) and (3) of the Securities Act)

62.     Paragraphs 1 through 61 are re-alleged and incorporated by reference.

63. By reason of the conduct described above, defendants Craig H. Carton, Joseph G. Meli, Advance Entertainment, LLC, AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and Tier One Tickets, LLC, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite degree of knowledge or state of mind (i) employed devices, schemes, or artifices to defraud; (ii) obtained money or property by means of untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

64. By reason of the conduct described above, Defendants violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) thereunder)**

65. Paragraphs 1 through 61 are re-alleged and incorporated by reference.

66. By reason of the conduct described above, defendants Craig H. Carton, Joseph G. Meli, Advance Entertainment, LLC, AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and Tier One Tickets, LLC, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged

in acts, practices, or courses of business which operated or would operate as a fraud or deceit

upon any persons, including purchasers or sellers of the securities.

> 67.    By reason of the conduct described above, Defendants violated Exchange Act

Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.    Permanently enjoin defendants Craig H. Carton, Joseph G. Meli, Advance

Entertainment, LLC, AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and

Tier One Tickets, LLC, their officers, agents, servants, employees and attorneys, and those

persons in active concert or participation with them who receive actual notice of the injunction

by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities

Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-

5 thereunder [17 C.F.R. 240.10b-5];

B.    Order defendants Craig H. Carton, Joseph G. Meli, Advance Entertainment, LLC,

AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and Tier One Tickets, LLC,

to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful

conduct alleged in this Complaint;

C.    Order defendants Craig H. Carton, Joseph G. Meli, Advance Entertainment, LLC,

AdvanceM Ltd., Misoluki, Inc., Misoluki, LLC, Ticket Jones, LLC, and Tier One Tickets, LLC,

to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §

77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

D.    Retain jurisdiction over this action to implement and carry out the terms of all

orders and decrees that may be entered; and

E.      Grant such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

The Commission hereby demands a trial by jury on all claims so triable.


Dated: September 6, 2017                    On behalf of the Commission,


                                            S/ Caitlyn M. Campbell
                                            Caitlyn M. Campbell
                                            Dahlia Rin* (MA Bar # 674137)
                                            Martin F. Healey* (MA Bar # 227550)
                                            U.S. Securities and Exchange Commission
                                            Boston Regional Office
                                            33 Arch Street, 24th Floor
                                            Boston, MA  02110
                                            (617) 573-8807 (Rin)
                                            RinD@sec.gov

                                            *Not Admitted in the S.D.N.Y.